IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY HAMMER, as assignee of Michael Rupnicki, Individually and d/b/a MR. TREE, and DANIEL SHAUGHNESSY, as Administrator of the ESTATE OF DEVIN WADE SHAUGHNESSY, *Plaintiff*, v. WESTERN WORLD, AN AIG COMPANY *Defendant*. | : : : : : : : : : : : : : : | CIVIL ACTION No. 23-1454 |

MEMORANDUM

**JOSÉ RAÚL ARTEAGA**　　　　　　　　　　　　　　　　　　　　　　　October 9, 2024
**United States Magistrate Judge**[1]

Plaintiff Jeffrey Hammer, as assignee of Michael Rupnicki, individually and d/b/a Mr. Tree, and Daniel Shaughnessy, as administrator of Devin Wade Shaughnessy's estate ("Assignors"), seeks a declaration that Defendant Western World Insurance Company owes a duty to defend or indemnify Assignors for the claims Hammer makes against them in consolidated lawsuits pending in the Philadelphia Court of Common Pleas.[2] Western World seeks the opposite: a declaration that it has no duty to defend or

---

[1] This case was reassigned to me after the parties consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings, including the entry of a final judgment, pursuant to 28 U.S.C. § 636(c). (*See* ECF 33.)

[2] The underlying consolidated state court cases are docketed at Nos. 210400754 and 2106048154.

indemnify Assignors for the claims made against them in the underlying state court actions. The parties have filed cross-motions for summary judgment. (ECF 26 and 27.) For the reasons set forth in this Memorandum, the Court denies Plaintiff's Motion and grants Defendant's Motion.

I.  **BACKGROUND**

In 2017, Rupnicki, doing business as "Mr. Tree," purchased a 2009 Freightliner truck, which he then had modified into a chipper truck for his tree removal business (the "Truck"). (ECF 30-1 at ECF p. 15.) Pine Hill Trailers made the modifications—including the addition of seven-foot-long toolboxes mounted on each side of the Truck—in August 2018 before delivering the Truck to Rupnicki. (ECF 26-9.) Both toolboxes are affixed to the Truck by bolts, function as storage compartments, and are used to carry tools and supplies. (ECF 27-1 at ECF ¶ 10.)

In 2019, Devin Wade Shaughnessy, an employee of Mr. Tree and a named insured, was driving the Truck on Township Line Road in Haverford Township, Pennsylvania, a multilane public roadway with traffic traveling in both directions. (*Id.* at ¶¶ 3-7, 17.) Hammer was driving his vehicle in an adjacent lane of traffic in the opposite direction. (*Id.* at ¶¶ 3-5.) The vehicles were traveling at speeds of approximately thirty-five to forty miles an hour. (*Id.* at ¶¶ 6-7.) While they were passing each other, an unlatched door on a toolbox appended to the truck swung open and extended into opposing traffic, hitting the driver's side exterior mirror of Hammer's vehicle. (*Id.* at ¶¶ 8, 9.) In 2021, Hammer filed a lawsuit seeking compensation for his alleged injuries arising from the ensuing accident in the Philadelphia County Court of Common Pleas. (ECF 27-3 at ECF p. 7.)

A $1,000,000 Western World Commercial Lines Policy NPP8305296 (the "Policy") issued to Rupnicki d/b/a Mr. Tree was in effect at the time. (*See* ECF 26-5 at ECF p. 1.) Section 2 of the Policy delineates its scope of coverage and applicable exclusions. Relevant here, the Policy includes an "Aircraft, Auto or Watercraft" exclusion (the "Auto Exclusion") which provides that it does not apply to:

> "Bodily injury" or "property damage" *arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned and operated by or rented or loaned to any insured*. Use includes operation and "loading or unloading."
>
> This *exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured*, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

(*Id.* at ECF p. 37-39 (emphasis added).) The Policy includes an exception to the Auto Exclusion (the "Mobile Equipment Exception"), which provides that the exclusion does not apply to:

> **(5)** "Bodily injury" or "property damage" arising out of:
>
> **(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or
>
> **(b)** the operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

(*Id.* at ECF p. 39.)

The Policy defines an "[a]uto" as "a land motor vehicle, trailer or semitrailer designed for travel on public roads, *including any attached machinery or equipment*" or "any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged." (*Id.* at ECF p. 47 (emphasis added).) The Policy's definition of "auto" does not include "mobile equipment," which is separately defined as "land vehicles, including any attached machinery or equipment . . . designed for use principally off public roads . . . whether self-propelled or not." (*Id.* at ECF p. 47-49.) The Policy also defines "mobile equipment" as excluding "self-propelled vehicles with . . . permanently attached equipment" including truck-mounted "cherry pickers and similar devices mounted on automobile or truck chassis . . . ," "air compressors, pumps, and generators . . . ," and equipment "designed primarily for . . . snow removal . . . ." (*Id.* at ECF p. 49.) Such vehicles are considered to be "autos." (*Id.*) "Mobile equipment" also does not include "any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law," as they are considered to be "autos." (*Id.*)

In 2022, Western World disclaimed coverage on the Policy that insured Rupnicki and Mr. Tree due to the Auto Exclusion. (ECF 30-1 at ECF p. 6.) As a result, Plaintiff filed the instant matter in 2023, seeking a declaratory judgment that Western World owes a duty to defend or indemnify Assignors against the claims made against them in the underlying state court action. (ECF 26-1 at ECF p. 6.)

## II. LEGAL STANDARDS

Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Id*. "The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." *Willis*, 808 F.3d at 643 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

"The rule is no different where there are cross-motions for summary judgment." *Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008); *see also Applemans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1997) (explaining that the summary judgment standard does not change when parties file cross-motions). Where, as here, cross-motions for summary judgment are filed, "the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016) (quoting 10A Charles Alan Wright et al., *Federal Practice & Procedure* § 2720 (4th ed.)).

Cross-motions merely claim that each side alone is entitled to summary judgment, and the motions do "not constitute an agreement that if one is rejected the other is necessarily granted or that the losing party waives judicial consideration and determination of whether genuine issues of material fact exist." *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968). The Court must view the facts and draw all reasonable inferences in the light most favorable to the non-moving party with respect to each party's motion. *See In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 357 (3d Cir. 2004); *see also Lawrence*, 527 F.3d at 310.

## III. DISCUSSION

The limited question before the Court is whether any material questions remain with respect to whether Western World owes a duty to defend or indemnify Assignors in the underlying state court action.

In Pennsylvania[3], "an insurer has a duty to defend if the" injured party's complaint "potentially comes within the policy's coverage." *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 225 (3d Cir. 2005). "An insurer must defend its insured until it becomes absolutely clear that there is no longer a possibility that the insurer owes its insured a defense." *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 673-74 (3d Cir. 2016). The duty to defend "even extends to actions that are 'groundless, false, or fraudulent' as long as there exists the possibility that the allegations implicate coverage." *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 541 (Pa. 2010).

---

[3] The parties agree that Pennsylvania law applies. (*See* ECF 26-1, ECF 27-3.)

If triggered, the duty to defend also carries "a conditional obligation to indemnify in the event the insured is held liable for a claim covered by the policy." *General Accident Ins. Co. of Am. v. Allen*, 692 A.2d 1089, 1095 (Pa. 1997). Both duties are at issue until the underlying "claim is confined to a recovery that the policy does not cover." *Id.* Unlike the duty to defend, a determination of the duty to indemnify is not necessarily limited to the underlying complaint's factual allegations; rather, the Court must determine that the insurer's policy actually covers a claimed incident. *State Farm Fire and Cas. Co. v. DeCoster*, 67 A.3d 40, 46 (Pa. Super. Ct. 2013) (citations omitted). However, because the duty to defend is "broader" than the duty to indemnify, if the insurer does not have a duty to defend its insured in the underlying action, the insurer also has no duty to indemnify. *Regent Ins. Co. v. Strausser Enters., Inc.*, 902 F. Supp. 2d 628, 636 (E.D. Pa. 2012).

The "four corners rule" governs whether an insurance policy covers a claim. *Ramara*, 814 F.3d at 673. The rule requires the Court to "compar[e] the four corners of the insurance contract to the four corners of the [underlying] complaint." *Vitamin Energy, LLC v. Evanston Ins. Co.*, 22 F.4th 386, 392 (3d Cir. 2022). When a policyholder is sued, "an insurer's duty to defend is triggered, if at all, by the factual averments contained in [the underlying] complaint[.]" *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Com. Union Ins. Co.*, 908 A.2d 888, 896 (Pa. 2006).

The Court's coverage analysis proceeds in two steps. First, the Court must determine the "scope of the policy's coverage." *General Accident Ins. Co.*, 692 A.2d at 1095. This is a question of law, as it involves the interpretation of the policy. *Kvaerner*, 908 A.2d at 897. The Court's primary goal is to "ascertain [and give effect to] the parties' intentions

7

as manifested by the policy's terms." *Id*. The "polestar" of the inquiry is the policy language. *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999).

Next, the Court compares the policy's terms to the allegations in the underlying complaint. The Court "does not look outside the allegations of the underlying complaint or consider extrinsic evidence." *Ramara*, 814 F.3d at 673. The Court must take the underlying complaint's factual allegations as true and liberally construe them in favor of the insured. *Nationwide Mut. Ins. Co. v. CPB Int'l, Inc.*, 562 F.3d 591, 596 (3d Cir. 2009). "A carrier's duties to defend and indemnify an insured in a suit brought by a third party depend on a determination of whether the third party's complaint triggers coverage." *Ramara,* 814 F.3d at 673.

## A. Scope of Coverage Under the Western World Policy.

### 1. The Auto Exclusion.

Western World contends it is entitled to summary judgment because the Auto Exclusion unambiguously precludes coverage for bodily injury arising out of the ownership, maintenance, use, entrustment, or operation of a "land motor vehicle, trailer or semitrailer . . . including any attached machinery or equipment." (ECF 26-5 at ECF p. 39, 47.) Thus, Western World argues that the Auto Exclusion precludes coverage for Hammer's claims against Assignors in the underlying action because his claims seek damages for bodily injury he sustained when an unlatched toolbox door on the motor vehicle that Shaughnessy was using and operating struck Hammer's car. Plaintiff, attempting to escape the Auto Exclusion's plain language, insists that the toolbox must be viewed in isolation as an "aftermarket accessory or modification" that was added to

8

the Truck, rather than as a part of the "auto" as defined by the Policy. (ECF 26-1 at ECF p. 17.) Plaintiff's argument is unavailing.

Under the Policy's plain terms, "'bodily injury' or 'property damage'" claims "arising out of the ownership, maintenance, use or entrustment to others . . . of any 'auto' . . . owned or operated by . . . any insured" are precluded from coverage. (*Id.* at ECF p. 39.) The Policy defines an 'auto' as "[a] land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged." (*Id.* at ECF p. 47.) Here, the Truck and the attached toolbox fall under the Policy's definition of an "auto." The truck was designed and is primarily used for travel on public roads and is subject to the Pennsylvania Motor Vehicle Financial Responsibility Laws, as evidenced by Rupnicki d/b/a Mr. Tree's purchase of a Commercial Automobile Policy from Agency Insurance Company of Maryland, Inc., that specifically listed the Truck as a covered vehicle. (ECF 29-2 at ECF p. 6.)

The Policy belies Plaintiff's argument that the toolbox must be treated in isolation: it defines auto to include "any attached machinery or equipment." (ECF 26-5 at ECF p. 47.) Although "attached machinery or equipment" are not defined in the Policy, "[w]ords of common usage . . . are to be construed in their natural, plain, and ordinary sense" and the Court may inform its "understanding of these terms by considering their dictionary definitions." *Allstate Prop. and Cas. Ins. Co. v. Squires*, 667 F.3d 388, 391 (3d Cir. 2012) (citations omitted).

9

The Merriam-Webster Online Dictionary defines "equipment" as, *inter alia*, "articles or physical resources serving to equip a person or thing: such as . . . the implements used in an operation or activity," or "all the fixed assets other than land and buildings of a business enterprise." *Equipment*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/equipment. (last visited Sept. 12, 2024). In his brief, Plaintiff describes the toolbox as "used to *carry tools and supplies used in the operation of the business* of Mr. Tree," echoing the dictionary definition's language. (ECF 30-1 at ECF p. 3 (emphasis added).) Plaintiff further admits that Rupnicki testified that the toolbox is "considered part of the truck" and has never been removed, even though the bolts may be taken off at any time. (*Id.* at ECF p. 7.)

The terms attached machinery or equipment "must also be read in light of the context and the overall provisions of in the policy in which [they] appear[ ]." *Nautilus Ins. Co. v. Bike & Build, Inc.*, 340 F. Supp. 3d 399, 418 (E.D. Pa. 2018) (citation and internal quotation omitted).). The Court's understanding is further informed by the Policy's definition of "mobile equipment." The Policy separately defines "mobile equipment," *inter alia*, as "any of the following types of land vehicles, including any attached machinery or equipment: bulldozers, farm machinery, forklifts and other vehicles designed for use principally *off* public roads." (ECF 26-5 at ECF p. 49 (emphasis added).) In contrast, self-propelled vehicles with "permanently attached equipment" like snow plows, cherry pickers, or air compressors "are not 'mobile equipment' but will be considered 'autos'" under the Policy. (*Id.*)

"Where there is only one reasonable interpretation of a contract, that interpretation controls because '[s]traightforward language in an insurance contract should be given its natural meaning.'" *Nautilus*, 340 F. Supp. 3d at 412 (citing *Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 419-20 (3d Cir. 2011)) (citation omitted). Here, given the separate definition of mobile equipment, along with the Policy's plain language and Plaintiff's own description of the toolbox, the definition of "auto" cannot reasonably be interpreted to apply to only the Truck and not the attached toolbox.

### 2. The Mobile Equipment Exception.

Plaintiff argues that the Policy's definition of "mobile equipment" includes the toolbox bolted to the Truck, and therefore, the Mobile Equipment Exception to the Auto Exclusion applies to Hammer's claims.[4] (ECF 30-1 at ECF p. 13.) Western World responds that Plaintiff's assertion has no basis in the Policy's language. (ECF 31 at ECF p. 7.) Western World has the better argument.

---

[4] The Court notes inconsistencies in Plaintiff's filings regarding application of the Mobile Equipment Exception. He concedes that Hammer's injuries "did not arise from the use of . . . mobile equipment" in his Memorandum Supporting His Motion for Summary Judgment. (ECF 26-1 at ECF p. 17.) In his Memorandum of Law Supporting His Response in Opposition to Western World's Motion for Summary Judgment, only a few pages after asserting that the Mobile Equipment Exception *covers* the toolbox, in a section under the subheading "The Mobile Equipment Exception to the Exclusion is *In*applicable," Plaintiff concedes "[Mr. Hammer's] injuries did not arise from the use of . . . mobile equipment as defined under the policy." (ECF 30-1 at ECF pp. 17, 22 (emphasis added).) Plaintiff also fails to provide any caselaw, evidence, or explanation supporting his contention that the toolbox falls under the definition of "mobile equipment." Despite Plaintiff's conflicting assertions, the Court nonetheless addresses the inapplicability of the Mobile Equipment Exception to Hammer's claims.

First, the Truck and its attached toolbox fall squarely within the Policy's "auto" definition, which explicitly encompasses "a land motor vehicle, trailer, or semitrailer designed for travel on public roads, *including any attached machinery or equipment*." (ECF 26-5 at ECF p. 47) (emphasis added). Plaintiff attempts to distinguish the toolbox on the grounds that it can be removed from the Truck. *(See* ECF 30-1 at ECF p. 7 ("[I]t is denied that it can never be removed from the truck as it is only attached by bolts, which can be removed."); *id.* at ECF p. 13 (arguing "the Western World Policy and definition of 'mobile equipment,' includes the toolbox/storage compartment attached to the Mr. Tree truck by bolts which can be removed at any time"); *see also id.* at ECF p. 17 ("It was not permanently attached to the truck; it could be moved; the bolts holding it t[o] the undercarriage to the truck, could be removed.").) This has no bearing on coverage, as the Policy's definition of an "auto" does not explicitly require attached machinery or equipment to be permanent. ECF 26-5 at ECF p. 47.)

Second, the Policy's "mobile equipment" definition negates Plaintiff's argument. "[M]obile equipment" includes farm machinery, bulldozers, forklifts, and other similar vehicles designed for use principally *off* public roads. (*Id.* at ECF p. 49 (emphasis added).) The Mobile Equipment Exception's scope is further limited to vehicles "maintained primarily for purposes other than transportation of persons and cargo," and, importantly, does not "include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law." (*Id.*) Here, the Truck, with its attached toolbox, was not "designed for use principally off public roads." (*Id.*) Rather, it was used to travel on public roads, and the toolbox was used to carry tools and other

12

cargo for the Mr. Tree business. (*See* ECF 30-1 at ECF p. 7.) Moreover, the Truck, with its attached toolbox, is subject to Pennsylvania's Motor Vehicle Financial Responsibility Law, as evidenced by the Agency Insurance Company of Maryland, Inc. Commercial Automobile Policy that Mr. Tree purchased to cover the Truck along with its other vehicles. (ECF 29-2 at ECF p. 6.)

Even if an argument could be made that the toolbox itself should be considered as "mobile equipment," there would be no coverage. The most natural reading of Policy's terms is that the Auto Exclusion was meant to exclude coverage for bodily injury and property damage that would otherwise be subject to coverage under a motor vehicle insurance policy. Thus, the Mobile Equipment Exception to the Auto Exclusion only applies to provide coverage for an accident occurring due the *use of permanently attached equipment*, but not for an accident occurring while *moving or traveling in the vehicle*, e.g., when an accident occurs while a forklift is being operated as a forklift. (ECF 26-5 at ECF p. 39.) Plaintiff does not argue that Devin Shaughnessy was operating the *toolbox* at the time of the incident. Rather, he was operating the *Truck* on a public road while the toolbox was attached to it. The Policy precludes coverage for "bodily injury" or "property damage" arising out of the "transportation of 'mobile equipment' by an 'auto' owned or operated by . . . any insured." (*Id.*) Thus, even if the toolbox itself was "mobile equipment"—which it is not under the Policy language—the accident still would not be covered because it occurred while the toolbox was being transported on a public road by the Truck.

## B.     The Underlying Complaint's Allegations Do Not Trigger a Duty to Defend.

Having determined the extent of coverage under the Policy, the Court next turns to the underlying state court complaint's factual allegations to determine whether they trigger coverage and thus, Western World's duty to defend and indemnify. Coverage of Plaintiff's claims is precluded under the Auto Exclusion because they clearly seek damages arising out of the use and operation of the Truck.

When "arising out of" language is used in a policy exclusion, as it is in the Auto Exclusion, the phrase "indicate[s] [a] 'but for' or 'cause and result' relationship." *Nautilus*, 340 F. Supp. 3d at 413 (citing *Madison Constr. Co.*, 735 A.2d at 110) (citation omitted). Applying this standard in *Allstate Property & Casualty Insurance Company v. Squires*, the Third Circuit held that injuries suffered when a driver swerved to avoid a cardboard box that had been dropped on the highway from an unidentified vehicle arose from the use of that vehicle, since it was directly "involved in the accident as it was transporting the box as cargo—a common use for many types of vehicles traveling on a roadway." 667 F.3d 388, 393 (3d Cir. 2012). While *Squires* dealt with an affirmative coverage grant, rather than an exclusion, consistent with the mandate to give effect to the plain meaning of policy language, courts have held that the same "but-for" standard applies to "arising out of" language in exclusions like the Auto Exclusion. *See Nautilus*, 340 F. Supp. 3d at 413 (E.D. Pa. 2018) (under Pennsylvania law, the phrase "arising out of," when used in a policy exclusion, "indicate[s] a 'but for' or 'cause and result' relationship.") (citations omitted); *see also Essex Ins. Co. v. RMJC, Inc.*, 306 F. App'x 749 (3d Cir. 2009) (holding that

"arising out of" language barred coverage for any injury for which such conduct was a but-for cause).

Plaintiff attempts to distinguish the incident here by arguing that Hammer's injuries were caused not by "use" of the Truck, but by Mr. Tree's: (1) failure to properly hire employees and/or train them to secure an attached exterior storage compartment; or (2) entrustment of the vehicle (and the affixed toolbox) to Shaughnessy, who failed to properly latch the toolbox. (ECF 1-2.) The underlying complaint asserts claims for Negligence, Vicarious Liability, and Negligent Hiring, Retention, and Supervision. However, "the particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered. Instead, it is necessary to look at the factual allegations contained in the complaint." *Mutual Ben. Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999).

The Court's determination is limited to the four corners of the underlying complaint. It alleges that Hammer's moving vehicle was struck by an unlatched door on the toolbox appended to the Truck, which was traveling in the opposite direction, causing the driver's side rearview mirror to shatter. (ECF 1-2 at ECF p. 5.) The impact allegedly "jarred" Hammer and caused him to be "violently twisted and thrown about inside the vehicle," resulting in his injuries. (*Id.* at ECF p. 5-6.) Plaintiff alleges, *inter alia*, that Assignors had a duty to drive the Truck, including toolboxes, compartments, and other accessories attached to the exterior of the vehicle at a safe and appropriate speed, and that in operating the Truck, Assignors violated multiple sections of the Pennsylvania

15

Motor Vehicle Code. (*Id.* at ECF p. 11.)[5] Although the state court complaint seeks to hold Assignors liable for Hammer's injuries on the theory that Mr. Tree was negligent in either hiring and supervising its employees or in entrustment of the Truck to Shaughnessy, the facts it alleges make clear that the use and operation of the Truck was a but for cause of the injuries for which Hammer seeks damages.

Pennsylvania courts—and federal courts applying Pennsylvania law—have consistently rejected attempts to divorce allegations of negligence from the excluded 'use' of a vehicle that actually causes a plaintiff's injuries. *Countryway Ins. Co. v. Slaugenhoup*, 360 F. App'x 348, 350-52 (3d Cir. 2010) (collecting cases) (finding that an exclusion provision regarding "the use of a motorized vehicle" was unambiguous and "meant to exclude all coverage for liability imposed by law as the result of motor vehicle use – by anyone"); *Nat'l Cas. Co. v. Borough of Wyomissing*, 57 F. App'x 62, 66 (3d Cir. 2003) (explaining that claims of negligent entrustment and negligent supervision "arise out of" use or ownership of a vehicle.) It follows that the Auto Exclusion must apply to bar coverage here, since none of the alleged negligent acts, such as Shaughnessy failing to latch the door or Mr. Tree failing to train drivers how to secure the door, could have directly resulted in an injury and "there could be no negligence claim against the insured but for someone's . . . 'use' of a motor vehicle." *Slaugenhoup*, 360 F. App'x at 352. The essence of Hammer's allegations against Assignors is the "use" of the Truck. Injury could

---

[5] The underlying complaint alleges that Assignors violated 75 Pa. C.S.A §§ 3309, 3361, 4903, and 4107.

16

only result because the door swung open and extended into oncoming traffic while the Truck was "used" to travel on Township Line Road.

Moreover, the Auto Exclusion itself not only explicitly excludes claims based on "use or entrustment to others," but also states that it bars coverage for claims alleging "negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others" by the insured. (ECF 26-5 at ECF p. 4.) The Policy's language is the "polestar" of the Court's inquiry, and the Court must give effect to this language in accordance with its plain meaning. *Madison Constr. Co*, 735 A.2d at 106. Therefore, Western World has no duty to defend Assignors under the Policy.

### C. Western World Has No Duty to Indemnify.

Western World also maintains it has no duty to indemnify Assignors. "Because an insurer's duty to defend its insured in a lawsuit is broader than its duty to indemnify, it necessarily follows that it will not have a duty to indemnify an insured for a judgment in an action for which it was not required to provide defense." *Ramara*, 814 F. 3d at 673 (quoting *Sikirica*, 416 F.3d at 225). Since the allegations in the underlying complaint do not give rise to a duty to defend, Western World also has no duty to indemnify Assignors.

## IV. CONCLUSION

For the reasons stated above, no genuine issues of material fact exist because the Truck and its attached toolbox clearly fall under the Auto Exclusion in the Western World Policy, and coverage is not triggered by the allegations in the underlying complaint[6] As

---

[6] Plaintiff also argues that summary judgment should be granted because the Agency Insurance Company of Maryland, which issued Mr. Tree's Commercial Auto

a result, the Policy does not provide coverage for Plaintiff's claims in the Court of Common Pleas matter. Plaintiff's Motion for Summary Judgment is **DENIED**, and Defendant's Cross-Motion for Summary Judgment is **GRANTED**.

    An appropriate Order follows.

---

Coverage, acknowledged liability. As coverage under the AIC policy is not before the Court and has no bearing on or relevance to coverage under the Western World policy, the Court will not address Plaintiff's argument.